UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE R. ROQUE PEREZ,

        Plaintiff,                        Case No. 1:24-cv-331

v.                                             Hon. Jane M. Beckering

A&A STAFFING SOLUTIONS L.L.C.
and WALESKA CHAVEZ,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jose R. Roque Perez (also known as Jose Roque) filed a complaint alleging five counts against defendants: Count I (Violation of the Fair Labors Standards Act 29 U.S.C. § 201 *et seq*. ("FLSA")) (Failure to pay statutory minimum wage) (29 U.S.C. § 206); Count II (Violation of FLSA) (Failure to pay overtime) (29 U.S.C. §§ 206 and 207); Count III (Violation of Michigan's Improved Workforce Opportunity Wage Act, M.C.L. § 408.931 *et seq*. ("IWOWA")) (Failure to pay minimum wage); Count IV (Violation of IWOWA) (Failure to pay overtime); and, Count V (Violation of FLSA) (Unlawful retaliation). *See* Compl. (ECF No. 1).

The Clerk entered a default of all defendants pursuant to Fed. R. Civ. P. 55(a) (ECF No. 37). "Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013). This matter is now before the Court on plaintiff's Motion for default judgment brought pursuant to Fed. R. Civ. P. 55(b) (ECF No. 39). *See* Minutes of Motion Hearing (ECF No. 42).

### I. Plaintiff's damages

#### A. Plaintiff's affidavit

Plaintiff seeks damages in the amount of $317,016.00. *See* Alvarez Aff. (ECF No. 39-3, PageID.161). Plaintiff filed a 35-paragraph affidavit in support of these damages. *See* Jose Roque Aff. (ECF No. 39-2). Plaintiff was employed by A&A Staffing Solutions ("A&A") from February 2021 through September 2023. *Id*. at PageID.111. Plaintiff stated that he worked 72 hours per week ("six days a week for about 12 hours per day") and that his regular rate of pay was $32.00 per hour when he was terminated from his employment. *Id*. Plaintiff stated that he was making between $1,800.00 and $2,000.00 per week working for defendants. *Id*. at PageID.113. Plaintiff was terminated from his position on September 5, 2023. *Id*. at PageID.111.

After his termination, plaintiff stated that he would earn less than $500.00 per month in profit from doing odd jobs and selling food on Facebook Marketplace. *Id*. at PageID.113. Plaintiff also applied for over 30 positions. *Id*. Eventually, he found steady employment with Meidema Produce, which lasted from August 2024 through January 31, 2025. *Id*. At Meidema Produce, plaintiff made $16.00 per hour. *Id*. He was terminated from that position on January 31, 2025 due to a reduction in force. *Id*.

Plaintiff also stated that losing his job at A&A was devastating. *Id*. at PageID.112. Among other things: his wedding planned for the month after his termination was significantly scaled back; they could not afford a honeymoon; he had to surrender his apartment; he accumulated debt for back child support due to not having a job; they accumulated $8,000.00 of credit card debt to supplement his wife's income to pay living expenses; he has not been able to replenish his savings; and, he suffered the humiliation by having to rely on his spouse's income. *Id*. at PageID.112-113.

### B.  Counsel's calculation of damages

Counsel set forth the following categories and calculations of damages in an affidavit and spreadsheet.  *See* Alvarez Aff. at PageID.159-161); Spreadsheet (ECF No. 39-3, PageID.162).

When defendants terminated plaintiff's employment, he was working between 56 and 62 hours per week, averaging 59 hours of compensable time per work week.  But for plaintiff's unlawful termination, he would have continued working at his assigned placement resulting in a gross weekly income of $2,192.00.  Over the course of the period of time from his termination to the filing of this motion, this amounts to approximately $328,800.00 in lost wages.  *See id*. at PageID.160-161.

The damages are recounted in a spread sheet which states that plaintiff would have worked 75 weeks, with an average of 59 hours per week, at a regular pay rate of $32.00 per hour and an overtime pay rate of $48.00 per hour.  Plaintiff calculated a weekly regular pay of $1,280.00 (40 hours x $32.00 per hour) and weekly overtime gross pay of $912.00 (19 hours x $48.00 per hour), for a total weekly gross pay of $2,192.00.  Over a period of 75 weeks, this amounted to $164,400.00.  *See* Spreadsheet (ECF No. 39-3, PageID.162).

The lost pay of $164,400.00 was doubled to $328,800.00 by liquidated damages available under the FLSA.

Plaintiff also had additional damages of $1,400.00 "due to the late payment of his final paycheck and $768.00 for the 24 hours of uncompensated work during his last week of employment." Affidavit at PageID.161.  The spreadsheet is not entirely clear with this portion of the damages, referring to: "Late Checks" of $1,400; "Week owed" of $768.00; "Liquidated" of

3

$1,536.00, and "Unpaid Wages owed" of $2,936. *See* Spreadsheet. Plaintiff's claim for this item is clarified in the brief stating:

> Plaintiff is owed $768.00 for the hours worked in the last week of his employment plus an additional amount in liquidated damages for a total of $1,536 for the unpaid wages and liquidated damages for his last week of employment. Plaintiff is also entitled to liquidated damages in the amount of $1,400 for the late payment of his final paycheck. (*Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 709 n. 20, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (prompt payment of wages is required); *see also Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir.1993) (late payment of wages is a violation of the FLSA).

Plaintiff's Brief (ECF No. 39-1, PageID.105). Accordingly, plaintiff claims additional damages related to his final paycheck in the amount of $2,936.00.

As an offset to the backpay owed, plaintiff performed other work at Meidema Produce. *See* Jose Roque Aff. at PageID.113. Plaintiff worked 23 weeks at this job, for an average of 40 hours per week, at a rate of pay of $16.00 per hour, for a weekly gross pay of $640.00. *See* Spreadsheet. Over a period of 23 weeks, plaintiff made $14,720.00 at this other employment.

On the spreadsheet, plaintiff subtracted the $14,720.00 this as an offset to the gross back pay owed to reach a total backpay with offset in the amount of $314,080.00, to which he added the damages related to the final paycheck of $2,936.00, for a total damage award requested of $317,016.00. *Id*.

In addition, plaintiff seeks punitive damages and attorney fees and costs.

### C. Discussion

Based on this record, the Court concludes that plaintiff should be awarded the requested unpaid wages, backpay, and liquidated damages in the amount of $317,016.00, less $5,999.00, for a total damage award of **$311,017.00**.

4

### 1.     Unpaid wages, backpay, and liquidated damages

Plaintiff's claims for unpaid wages, back pay and liquidated damages arise under the FLSA.  Pursuant to the FLSA, 29 U.S.C. § 216(b),

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

In addressing the issue of liquidated damages, the Court notes that "a district court, has the discretion not to award liquidated damages to a prevailing plaintiff if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938.'"  *Elwell v. University Hospitals. Home Care Services*, 276 F.3d 832, 840 (6th Cir. 2002), quoting 29 U.S.C. § 260.  Here, defendants have failed to meet their burden; indeed, defendants do not contest plaintiff's claims.

With respect retaliation, 29 U.S.C. § 215(a)(3), states that

> After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person . . . .  (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

The remedies available for retaliation are as follows,

> Any employer who violates the provisions of section 215(a)(3) or 218d of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b).

5

### 2. Emotional distress

Plaintiff also seeks damages for emotional distress. The Sixth Circuit has concluded that damages for mental and emotional distress are available for violation of the anti-retaliation provisions of the FLSA as set forth in 29 U.S.C. § 216(b). *Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004). As discussed, plaintiff suffered emotional distress as a result of his unlawful termination. Plaintiff seeks an amount of damages for emotional distress equal to the lost wages he would have earned since the termination, *i.e.*, $164,400.00. As discussed, plaintiff is receiving this amount as liquidated damages due to the retaliation. Under the circumstances of this case, the Court concludes that plaintiff has received sufficient compensation for his unlawful termination and that no additional compensation is required for emotional distress. *See Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) ("[l]iquidated damages under the FLSA are compensation, not a penalty or punishment") (internal quotation marks omitted).

### 3. Punitive damages

"The FLSA does not provide for punitive damages. Neither the Sixth Circuit nor the Western District of Michigan have ruled that punitive damages are available under the Act." *Lacost v. Mod - Masters of Detection Security Services, Inc.*, No. 1:23-cv-475, 2023 WL 8378522 at *2 (Nov. 13, 2023), *R&R adopted*, 2023 WL 8369935 (W.D. Mich. Dec. 4, 2023).

### 4. Reduction for other work performed

As a final matter, plaintiff did not account for his other income earned since the termination from A&A. Based on plaintiff's affidavit, he worked at Meidema's Produce for 23 of the 75 weeks since his termination. This leaves 52 weeks (approximately 12 months) unaccounted during which plaintiff performed odd jobs and earned income from Facebook Marketplace. Plaintiff's affidavit stated that he would earn less than $500.00 per month in profit from doing odd

6

jobs and selling food on Facebook Marketplace. If plaintiff earned $500.00 of profit per month, this would amount to $6,000.00 of additional income. Assuming that plaintiff earned some amount less than $500.00 a month, then he earned less than $6,000.00. Plaintiff did not provide an accounting for the amount of profit he earned. Given this situation, the Court concludes that plaintiff's testimony supports a finding that he earned $5,999.00 during this time period (*i.e.*, an amount less than $500.00 per month). Accordingly, plaintiff's back pay will be offset by $5,999.00 of this other income.

### 5. Conclusion

For these reasons, plaintiff should be awarded a default judgment in the amount of **$311,017.00**.

## II. RECOMMENDATION

Accordingly, I respectfully recommend that plaintiff's motion for default judgment (ECF No. 39) be **GRANTED in part** in the amount of **$311,017.00**.

If the Court adopts this Report, then I further recommend that plaintiff be allowed to file a motion for attorney fees.

Dated: August 15, 2025                /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).